UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

QUORUM HEALTH RESOURCES, LLC,

       Plaintiff,

v.                                                       Civ. No. 11-374-MV/LAM

LEXINGTON INSURANCE COMPANY,
and IRONSHORE SPECIALTY INSURANCE COMPANY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Lexington Insurance Company's Motion to Transfer Venue Pursuant to 28 U.S.C.§ 1404(a) or, in the Alternative, to Stay [Doc. 17]. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that Lexington Insurance Company's Motion is well-taken and will be GRANTED.

## BACKGROUND

Quorum Health Resources LLC ("Quorum"), a subsidiary of CHS/Community Health Systems, Inc. ("CHS") and Triad Healthcare Corporation ("Triad"), provides consulting services, training and key management personnel to hospitals across the country, including the Gerald Champion Regional Medical Center (the "Medical Center") in Alamogordo, New Mexico. Pursuant to the contract between Quorum and the Medical Center, the Medical Center added Quorum, CHS and Triad to its primary and excess insurance policies. Quorum purchased its own excess healthcare professional liability insurance policies, above the policies purchased by the Medical Center, from Defendants, Lexington Insurance Company ("Lexington") and Ironshore Specialty Insurance Company ("Ironshore"). Quorum, CHS and Triad are all insureds

under the Lexington and Ironshore policies.

Quorum, CHS and Triad were named as defendants in approximately 50 lawsuits in the Twelfth Judicial District Court, County of Otero, State of New Mexico (the "Underlying Lawsuits"), filed by various individuals who are former patients of the Medical Center. The Underlying Lawsuits allege that CHS and Triad are liable in *respondent superior* for the alleged misconduct of Quorum. Quorum provided notice of the Underlying Lawsuits to Lexington and Ironshore. Lexington and Ironshore communicated their coverage position, reserving their rights to deny coverage for the Underlying Lawsuits on various grounds.

On May 3, 2011, Quorum filed the instant declaratory judgment action against Lexington and Ironshore seeking a declaration from this Court regarding the parties' rights and obligations, if any, under the subject insurance policies in connection with the Underlying Lawsuits (the "New Mexico Action"). Based on their position that there is no personal jurisdiction in New Mexico over either CHS or Triad, neither CHS nor Triad joined the New Mexico Action. Instead, on May 12, 2011, CHS and Triad filed a parallel declaratory judgment action against Lexington and Ironshore seeking a declaration from the United States District Court for the Middle District of Tennessee regarding the parties' rights and obligations, if any, under the subject insurance policies in connection with the Underlying Lawsuits (the "Tennessee Action"). The parties agree that the issues in the New Mexico Action and the Tennessee Action are identical.

On August 25, 2011, Lexington filed the instant Motion to Transfer Venue Pursuant to 28 U.S.C.§ 1404(a) or, in the Alternative, to Stay ("Lexington's Motion to Transfer Venue"). *See* Doc. 17. Ironshore filed a Response to Lexington's Motion, agreeing with Lexington's Motion. *See* Doc. 18. Quorum opposes the Motion. *See* Doc. 19.

Meanwhile, in the Tennessee Action, CHS and Triad filed a motion to "administratively close and/or stay proceedings" pending resolution of the New Mexico Action, on the ground that the two cases "are virtually identical and seek the same declaratory relief against the same defendants under the same insurance policies." *See CHS/Community Health Sys. v. Lexington Ins. Co.*, No. 3:11-cv-00449, Order dated 11/8/11 at 2. The Court stayed the Tennessee Action, but only pending resolution by this Court of Lexington's Motion to Transfer Venue, holding that resolution of Lexington's Motion to Transfer Venue might preclude the necessity for the Middle District of Tennessee to resolve the issues raised by the parties before it. *Id.* at 3. Specifically, the Court noted that "[i]f the District of New Mexico finds it proper to transfer [Quorum's] action to this Court, the cases will be consolidated and Plaintiffs' request will be rendered moot." *Id.* The Court ruled that CHS and Triad would be permitted to renew their request to stay proceedings in the event this Court were to decide to retain the New Mexico Action. *Id.*

## DISCUSSION

I. <u>Standard on Motion to Transfer Venue</u>

28 U.S.C. Section 1404(a) provides that "a district court may transfer an action '[f]or the convenience of parties and witnesses, [and] in the interest of justice, . . . to any other district or division where it might have been brought.'" *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting 28 U.S.C. § 1404(a)). The objectives of Section 1404(a) are "to prevent waste of time, energy and money and to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense." *Beatie & Osborne LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

The district court is afforded discretion "to adjudicate motions for transfer according to

3

an individualized, case-by-case consideration of convenience and fairness." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). The Court weighs the following factors in reaching its decision:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* (citation omitted). The party requesting transfer "bears the burden of establishing that the existing forum is inconvenient." *Id.* at 1515.

II. <u>Lexington's Motion to Transfer Venue</u>

A balancing of the relevant factors demonstrates that Lexington has met its burden of showing that transfer of venue is warranted.

    A.    *Plaintiff's Choice of Forum*

Generally, "the plaintiff's choice of forum should rarely be disturbed." *Bartile Roofs*, 618 F.3d at 1167. "The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district." *Id.* at 1168. In this case, it is undisputed that Quorum does not reside in New Mexico. Instead, Quorum is a Tennessee corporation with its principal place of business in Tennessee.

Further, courts accord "little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" *Id.* As the Tenth Circuit in *Bartile Roofs* recognized, in a declaratory judgment action involving insurance coverage such as this one, "several district courts have determined that

4

the locus of operative facts . . . is either the site of the policy's execution or the site of the decision to deny coverage." *Id.* (citing *Am. Steamship Owners Mut. Prot. & Indem. Ass'n v. LaFarge N.A., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007), *aff'd sub nom.*, *N.Y. Marine & Gen. Ins. Co. v. LaFarge N.A., Inc.*, 599 F.3d 102 (2d Cir. 2010); *Evangelical Lutheran Church in Am. v. Atl. Mut. Ins. Co.*, 973 F. Supp. 820, 823 (N.D. Ill. 1997)).  Although noting that "other courts have found that the location of the alleged damage or loss is 'significant' for purposes of analyzing the convenience of a particular venue," the Court did not need to decide whether to adopt this opposing approach, as the record before it revealed that there was not "a single, alternative venue." *Id.*  Rather, the contract at issue had been executed in Utah, and the denial of coverage had occurred in Colorado. *Id.*  Here, the subject insurance policies were negotiated, purchased and issued in Tennessee to a Tennessee company, and are subject to interpretation under Tennessee law.  Thus, in contrast to the circumstances in *Bartile Roofs*, here there is a "single, alternative venue," – Tennessee – that would be convenient.

Further, the Tenth Circuit has made clear that, for venue purposes, "in determining what events or omissions give rise to a claim, the focus is on relevant activities of the defendant, not of the plaintiff." *Goff v. Hackett Stone Co.*, 185 F.3d 874, 1999 WL 397409, *1 (10th. Cir. 1999) (citation omitted).  Here, the allegedly negligent acts for which Quorum was sued in the Underlying Lawsuits, even if related to New Mexico, are acts of Plaintiff, not Defendants.  Thus, those acts have no relevance for venue purposes.  For these reasons, Plaintiff's choice to initiate this action in New Mexico is granted little weight.

      B.    *Convenience of Witnesses*

"The convenience of witnesses is the most important factor in deciding a motion under Section 1404(a)." *Bartile Roofs*, 618 F.3d at 1169 (citation omitted).  In order to show

inconvenience, the party seeking transfer must "(1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id.* (citation omitted). Here, Lexington has identified potential trial and deposition witnesses, their location, and the subject matter of their testimony. Out of a total of 24 potential witnesses, 11 are in Tennessee, and only two are in New Mexico. Lexington has shown that compulsory process would be necessary to secure the appearance of at least four witnesses, including individual and Rule 30(b)(6) witnesses, both at trial and at deposition. Accordingly, the convenience of witnesses weighs in favor of transfer.

      C.      *Conflict of Laws Questions*

"In a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law." *Id.* at 1169. This factor, however, "receives less weight when the case involves relatively simple legal issues." *Id.* Further, "federal judges are qualified to apply state law." *Id.*

Here, the parties agree that the law of Tennessee governs the construction and interpretation of the subject insurance policies. This case arguably involves a "straightforward contract question" as to which this Court is qualified to apply Tennessee law. *LaFarge N.A., Inc.*, 474 F. Supp. 2d at 486. Nonetheless, "the forum's familiarity with the governing law may be a factor even in contract cases." *Id.* Accordingly, this factor weighs *slightly* in favor of transfer. *Bartile Roofs*, 618 F.3d at 1169.

      D.      *Judicial Economy*

"With respect to 'judicial economy,' the Supreme Court has held that 'interest of justice' encompasses the private and public economy of avoiding multiple cases on the same issues."

6

*Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 130 (E.D.N.Y. 2004) (citing *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent")). Accordingly, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Jacob Joseph Sch.*, 342 F. Supp. 2d at 130 (citing *Citicorp Leasing, Inc. v. United Am. Funding, Inc.*, No. 03 Civ. 1586, 2004 WL 102761, *6 (S.D.N.Y. Jan. 21, 2004) ("The judicial economy factor is a separate component of the court's section 1404(a) transfer analysis and may be determinative in a particular case.")); *see also Williams v. City of New York*, No. 03 Civ. 5342, 2006 WL 399456, *3 (S.D.N.Y. Feb. 21, 2006) (transferring case to district where related case was pending in order to achieve judicial economy where two actions involved same plaintiff, issues, witnesses, and discovery); *Jacob Joseph Sch.*, 342 F. Supp. 2d at 131 (holding that denial of transfer to district where related case was pending "would result in duplicative actions in which two federal judges would preside over the same basic claim, wasting judicial resources, requiring the parties to unnecessarily expend more time and expense, and risking potentially inconsistent results"). Indeed, the judicial economy factor is of particular import where a transfer of venue is the only way for all of the parties involved in a dispute to be joined in a single action. *See Granger & Assocs., Inc. v. Marion Steel Co.*, No. 2:00-CV-355, 2001 WL 15632, *7-8 (S.D. Ohio Jan. 4, 2001) (transferring case where transferor court lacked jurisdiction over one party, and thus could not afford complete relief to all of the parties involved in dispute); *Preston v. Missouri-Nebraska Express, Inc.*, No. 91-0056-CV-W-6, 1991 WL 626751 (W.D. Mo. Oct. 16, 1991) ("the avoidance of piecemeal litigation is a factor that weighs

in favor of transferring an action to a district in which all parties can be joined in a single action.").

Here, it is undisputed that the issues in the New Mexico Action and the Tennessee Action are identical. Indeed, CHS and Triad specifically acknowledged in their motion to administratively close and/or stay the Tennessee Action that the two actions "seek the same declaratory relief against the same defendants under the same insurance policies." It is also undisputed that CHS and Triad elected to file the Tennessee Action, rather than join the New Mexico Action, based on their position that they are not subject to jurisdiction in this Court. There is no similar argument that the Court in the Tennessee Action lacks jurisdiction over any of the parties involved in the current dispute. Accordingly, as the Tennessee Court noted in its decision on the CHS/Triad motion to close/stay, if this Court grants Lexington's Motion to Transfer Venue, the two cases can be consolidated, and all of the parties can have their coverage issues resolved at once. Under these circumstances, failure to transfer venue would "permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts lead[ing] to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co.*, 364 U.S. at 26. Thus, the judicial economy factor, if not determinative, weighs heavily in favor of transfer.

  E.  *Remaining Factors*

The remaining factors are either neutral or irrelevant. Lexington has not demonstrated that: (1) the merits of this action are unique to a particular locale, making it preferable for a court sitting in Tennessee to adjudicate this case; (2) the costs of making necessary proof would be higher at a trial in New Mexico; (3) there are obstacles to a fair trial in New Mexico; or (4) a judgment could not be enforced in New Mexico. Additionally, the caseload of judges in the

District of New Mexico and the Middle Middle District of Tennessee appears to be similar.

## CONCLUSION

On balance, the relevant factors weigh in favor of a transfer of the New Mexico action to the Middle District of Tennessee, for consolidation with the Tennessee action. Specifically, the convenience of witnesses, the conflict of laws issue, and the interests of judicial economy all weigh in favor of transfer. Although Plaintiff chose New Mexico as its forum, under the circumstances here, that choice is not entitled to deference by the Court. As the remaining factors are either irrelevant or neutral, they do not affect the Court's analysis.

**IT IS THEREFORE ORDERED** that Defendant Lexington Insurance Company's Motion to Transfer Venue Pursuant to 28 U.S.C.§ 1404(a) or, in the Alternative, to Stay [Doc. 17] is **GRANTED,** and this action is hereby **TRANSFERRED** to the United States District Court for the Middle District of Tennessee. To effectuate this Order, the Clerk is directed to transfer this action to the United States District Court for the Middle District of Tennessee as soon as practicable.

DATED this 7th day of March, 2012.

_____
MARTHA VAZQUEZ
United States District Court Judge